J-S17022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF R.P., JR., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.P., JR., | |
| Appellant | No. 1087 WDA 2014 |

Appeal from the Dispositional Order April 29, 2014
In the Court of Common Pleas of Allegheny County
Juvenile Division at No(s): JID#89657-A, Docket #2012-12

BEFORE:  GANTMAN, P.J., SHOGAN, and FITZGERALD,* JJ.

MEMORANDUM BY SHOGAN, J.:                              **FILED MAY 1, 2015**

Appellant, R.P., Jr., appeals from the April 29, 2014 dispositional order[1] entered by the Allegheny County Court of Common Pleas.  We affirm.

The juvenile court summarized the facts of the case, as follows:

Homestead Police Officers were conducting surveillance of a house known to be the sales location for a specific brand of stamped heroin called AR15.  Trial Transcript 04/01/2014 pp. 10-11.  The officers obtained information from two separate sources that an individual by the name of Dorian Richardson Serrano, the subject of an eventual search warrant, was selling heroin out of that same house.  *Id*. at 10, 35.  The officers obtained a search warrant and executed said warrant on February 10, 2014 at approximately 4:00 p.m. at the known heroin location.  *Id*. at 12.  Several officers knocked and

_____

*  Former Justice specially assigned to the Superior Court.

[1]  We have corrected the caption to reflect that the appeal is from the dispositional order.

announced their presence at the house. When there was no response, one officer breached the door with the batting [sic] ram. *Id*. at 13, 74. The officers went into the house and began questioning the female sitting in the living room. They then began to search the house while calling out "police" and "search warrant." From the search, it was unclear who lived in the house. *Id*. at 43. Officer Matt Fusco was the first or second officer into the house where Appellant was located while Officer Ronald DePelligrin was behind Officer Fusco when entering the house and subsequently the back bedroom. Both officers saw four male juveniles in the back bedroom of the house, one being Appellant. *Id*. at 14-16, 47. Officer Fusco saw what was later determined to be a replica or BB gun lying on the floor in the middle of the room, thus he did not enter the room right away, but remained in the doorway. When Officer Fusco looked into the room one individual was sitting in the middle of the bed, one individual was sitting in the corner of the room, both with their hands raised upon seeing Officer Fusco and Appellant and his co-defendant were sitting on the edge of the bed leaning into the closet, both with at least one hand in the closet. Both Appellant and his co-defendant were bending down near the bottom of the closet moving their arms back and forth in a motion consistent with moving items. *Id*. at 52, 54-56, 79. Officer Fusco ordered Appellant and his co-defendant to put their hands up and they complied. The officers secured or detained the males in the room and then they were handcuffed and moved from the bedroom one by one. Officer DePelligrin searched the closet and Officer Fusco searched the other side of the small bedroom. *Id*. at 16, 49, 64. Officer DePelligrin found 6.21 grams of heroin and drug paraphernalia on the bottom of the closet, towards the top of the items in the closet, but settled down a bit. *Id.* at 21-23, 27, 70. A .38 Special caliber Ruger revolver, a .380 auto caliber Bersa pistol and a "magazine," and four .380 caliber cartridges were also found in the bottom of the closet and were in plain view to Officer Fusco. The firearms were both found to be in good operating condition. *Id*. at 60, 67-68.

Juvenile Court Opinion, 9/19/14, at 2–4.

A juvenile petition filed on February 12, 2014, charged Appellant with one count of receiving stolen property, two counts of carrying a firearm

without a license, and one count of possession of heroin. Present counsel was appointed and entered his appearance on February 25, 2014. The juvenile court held a delinquency hearing for Appellant and his co-defendant, T.W., on April 1, 2014. Appellant was adjudicated delinquent of one count of carrying a firearm without a license and one count of possession of heroin and was detained at Shuman Center. Disposition was deferred.

On April 8, 2014, the juvenile court held a hearing following which Appellant was placed on electronic monitoring and released to his mother's custody. Disposition was deferred once again. On April 29, 2014, the juvenile court held a dispositional hearing and committed Appellant to Wilkinsburg Community Intensive Supervision Program ("CISP"). On May 9, 2014, Appellant filed a Post-Disposition Motion for Reconsideration Pursuant to Pa.R.J.P. 620, which was denied by operation of law. Appellant filed a timely notice of appeal to this Court on July 8, 2014. Both Appellant and the juvenile court complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

I.   Whether the trial court erred in adjudicating R.P., Jr. delinquent of possession of a controlled substance and carrying a firearm without a license at T178506 when the evidence presented by the Commonwealth was insufficient to establish the elements of either crime beyond a reasonable doubt?

II.  Whether the trial court's delinquency adjudications of R.P., Jr. for possession of a controlled substance and carrying a firearm without a license at T178506 are against the weight of the evidence presented at trial?

Appellant's Brief at 3.

Our standard of review of dispositional orders in juvenile proceedings is settled. The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014). Indeed, the Superior Court will not disturb the lower court's disposition absent a manifest abuse of discretion. *In the Interest of J.D.*, 798 A.2d 210, 213 (Pa. Super. 2002).

Appellant first argues that there was insufficient evidence to find that he committed the delinquent acts of carrying a firearm without a license and possession of heroin. Appellant's Brief at 10. Specifically, Appellant alleges that the Commonwealth failed to provide sufficient evidence that Appellant carried an unlicensed firearm concealed on his person and failed to establish that he had dominion or control of the heroin to support a finding of constructive possession. *Id*. at 11–18. We will address these arguments in reverse order.

In evaluating a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, our standard of review is as follows:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
>
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be

applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348-349 (Pa. Super. 2013) (quoting *In re A.V.*, 48 A.3d 1251, 1252–1253 (Pa. Super. 2012)). The finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa. Super. 2010).

We address Appellant's contention that the evidence was insufficient to support his conviction of possession of heroin. We note that because the heroin was not found on Appellant's person, the Commonwealth was required to prove constructive possession to establish the offense. *Commonwealth v. Estepp*, 17 A.3d 939, 944 (Pa. Super. 2011).

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa. Super. 2012) (internal quotation marks and citation omitted). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. ***Commonwealth v. Hopkins***, 67 A.3d 817, 820–821 (Pa. Super. 2013). Appellant posits that he did not have constructive possession of the heroin found in the closet. For the reasons that follow, our review of the record compels the contrary conclusion.

Without further explanation, Appellant asserts that the trial court "relied too heavily" on Appellant's purported arm movements in the closet. Appellant's Brief at 18. We remind Appellant that it is within the province of the fact-finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1033 (Pa. 2007).

Appellant contends that the instant case is similar to ***Commonwealth v. Valette***, 613 A.2d 548 (Pa. 1992). Appellant's Brief at 18. In truth, ***Valette*** is factually dissimilar to the instant case and does not provide support for Appellant's claim. In ***Valette***, the appellant was sitting in the living room when police entered to execute a search warrant. In a second-floor bedroom of the two-floor apartment, police discovered a closed briefcase hidden beneath floorboards containing 283 grams of cocaine, a sifter, plastic bags, and a cellular telephone. Police found identification for other individuals in the apartment, but found none for the appellant.

Nothing incriminating was found within the room where the appellant was situated at the time of the raid, and no contraband was found on his person. *Id*. at 549. We reject Appellant's suggestion that ***Valette*** supports his position.

Here, Appellant was with three other male juveniles in a bedroom on the first floor of a converted house in Homestead, Pennsylvania, when police executed a search warrant based on drug activity previously observed at the residence. N.T., 4/1/14, at 10–11. Homestead Police Officer Ronald DePelligrin testified that he and six other police officers executed the warrant on February 10, 2014. *Id*. at 6, 12. Homestead Detective Matt Fusco testified that two of the juveniles were brothers who resided at the house and were known to him. *Id*. at 50, 52. The other two juveniles in the room were Appellant and T.W., Appellant's co-defendant; they did not live at the house. *Id*. at 50–53. Appellant and T.W. were leaning into the closet, bent down to the floor, with their heads, torsos, and right arms in the closet. *Id*. at 55–58. Detective Fusco described Appellant as leaning into the closet with both hands in the closet and with his arms moving back and forth. *Id*. at 56–57. Appellant's and T.W.'s arms were moving back and forth in the bottom of the closet making motions consistent with an attempt to conceal items in the clothes and the other objects strewn across the closet floor. *Id*. at 18, 54, 59. In comparison, the other two males already had their hands up when Officer Fusco entered the bedroom. *Id*. at 52.

Officer DePelligrin searched the left half of the room, which included the closet, and Detective Fusco searched the right half, which included the bed.  N.T., 4/1/14, at 17, 60.  Amidst the clutter on the closet floor, Officer DePelligrin found two firearms on the left side and two bundles of heroin toward the center.  *Id*. at 18.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, it can be inferred that Appellant and his companions heard the commotion caused by the police breaking in the door and shouting that they were executing a search warrant.  It also can be reasonably inferred that Appellant and T.W. were attempting to secrete the drugs when police arrived at the bedroom door and observed them with their arms in the closet making motions consistent with hiding something.  This raises a clear inference of constructive possession, as it demonstrated Appellant's ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control.  *Commonwealth v. Johnson*, 26 A.3d 381, 1093–1094 (Pa. 2011) (intent to maintain conscious dominion may be inferred from totality of the circumstances).

The juvenile court analyzed the evidence and found that it supported the conclusion "that Appellant and his co-defendant had equal access and control over the contraband . . . ."  Juvenile Court Opinion, 9/19/14 at 6.  The juvenile court continued, "The Commonwealth offered a lab report identifying what was found in that closet as heroin.  Further, the

Commonwealth proved Appellant's constructive possession of the heroin through his access and proximity to the heroin and his movements demonstrating both intent and ability to assert control over the controlled substance." *Id*. We agree with the juvenile court and reject Appellant's claim.

We next address Appellant's argument that there is insufficient evidence of record to support his conviction of carrying a firearm without a license. The pertinent statutory provision of the Pennsylvania Uniform Firearms Act provides in relevant part as follows:

**§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.--**

(1) Except as provided in paragraph (2) [irrelevant to the instant case], any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Pursuant to 18 Pa.C.S. § 6106(a)(1), the Commonwealth was required to establish that either Appellant carried a firearm in a vehicle; or carried a firearm concealed on or about his person when he was not in his home or place of business; and that he did not have a license to carry a firearm. Appellant challenges the Commonwealth's alleged failure to prove "that the

firearm[] [was] concealed on or about Appellant's person."  Appellant's Brief at 14.

Utilizing the same constructive-possession analysis it advanced in support of Appellant's contention that insufficient evidence supported his conviction for possession of heroin, the juvenile court found as follows:

> The Commonwealth proved, at trial, through the credible testimony of the police officers and the admitted lab reports that the weapons found in the closet of the bedroom were operable firearms capable of firing the ammunition for which it was manufactured.  Trial testimony also supported that Appellant was not the age of majority, and thus could not have a license to the firearms found in the bedroom closet.  Further, it was determined through testimony that at least one of the weapons was stolen.  Because the weapons were not found on the Appellant's person, the Commonwealth argued that there was constructive possession, or that Appellant had both the intent and ability to control the firearm.

Juvenile Court Opinion, 9/19/14, at 4–5.  The juvenile court found that "the surrounding facts strongly support[ed]" its conclusion that Appellant had constructive possession of the firearm.  *Id*. at 6.

The juvenile court relied upon *Commonwealth v. Smith*, 392 A.2d 727 (Pa. Super. 1978), to support its constructive-possession conclusion.[2]  In *Smith*, the defendant secreted a loaded pistol and drugs in a bag on a public street.  The paper bag was merely "in proximity" to the appellant, in

---

[2]  We acknowledge that the conviction in *Smith* was pursuant to the now-repealed statute of carrying a firearm in public without a license.  Nevertheless, the court's analysis in that case is relevant to demonstrate the requisite power and intent to control the contraband upon which the convictions were based.  *Id*. at 729.

that it was on the pavement where the appellant was standing. The arresting officer observed the appellant bend down near his left foot and then resume a standing position. We concluded that this testimony "convincingly demonstrated the requisite power and intent to control the contraband upon which the convictions are based." *Id*. at 729.

In the case *sub judice*, the firearm, without doubt, was not found in a vehicle. It also is not disputed that the apartment was not Appellant's place of abode, the gun indeed was a firearm, and due to Appellant's minority, he could not possess a license for a firearm. Thus, the remaining words of the statute required proof that Appellant concealed the firearm on **or about** his person. 18 Pa.C.S. § 6106(a)(1). Merriam–Webster's Dictionary defines "about" as "reasonably close to" and "in the vicinity." Merriam–Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/about. Webster's New Universal Unabridged Dictionary defines about as "near; close to." Webster's New Universal Unabridged Dictionary 6 (1996). The Commonwealth's demonstration that Appellant constructively possessed the firearms by showing his ability to exercise conscious control or dominion over them and the intent to exercise that control is sufficient to prove the weapons were concealed "about the person" as required by 18 Pa.C.S. § 6106.

In interpreting statutes, this Court has established that "[w]hen the language of a statute is clear and unambiguous, it must be given effect in

- 11 -

accordance with its plain and common meaning." ***Commonwealth v. Ostrosky***, 866 A.2d 423, 427 (Pa. Super. 2005) (citation omitted); 1 Pa.C.S. § 1903(a). In ***Commonwealth v. Lopez***, 663 A.2d 746 (Pa. Super. 1995), we reiterated our Supreme Court's admonition that the word "or" occurring in a statute must be given its ordinary meaning unless such a construction would give a result which is absurd, impossible of execution, highly unreasonable, or tending to nullify the legislative intent. ***Id***. at 749. ***See also Commonwealth v. Diodoro***, 970 A.2d 1100, 1107 (Pa. 2009) (statute utilizing disjunctive "or" was purposeful use by General Assembly, and the terms so connected "were meant to have different applications").

Here, the Commonwealth presented evidence showing that Appellant had both the power to control the firearm and intent to exercise that control through the testimony of Officer DePelligrin and Detective Fusco. The officers observed Appellant and T.W. with their arms in the closet making motions consistent with hiding something. This raised a clear inference of constructive possession, as it demonstrated Appellant's ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. ***Johnson***, 26 A.3d at 1093–1094 (intent to maintain conscious dominion may be inferred from totality of the circumstances). Thus, we agree with the juvenile court that there was sufficient evidence to support Appellant's adjudication for carrying a firearm without a license.

Appellant's final issue assails the weight of the evidence. Appellant contends that the trial court abused its discretion when it accorded "improper weight . . . to the testimony of Officers DePelligrin and Fusco, to the extent that they were inconsistent as to location and configuration of the juveniles within the room when [the officers] arrived on the scene." Appellant's Brief at 20. This Court applies the same standard for reviewing weight-of-the-evidence claims in juvenile cases as those involving adults. *In re R.N.*, 951 A.2d 363, 370 (Pa. Super. 2008), called into question on other grounds, *In re J.B.*, 106 A.3d 76 (Pa. 2014).

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Ramtahal*, 33 A.3d 602 (Pa. 2011). "An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Id*. at 609. "The trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). A weight-of-the-evidence claim is waived for failure to raise the issue in the trial court. Pa.R.Crim.P. 607(A); *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014).

While the comment to Pa.R.Crim.P. 607 specifies that weight-of-the-evidence claims in criminal proceedings are waived unless they are raised with the trial court in a motion for a new trial, "the Pennsylvania Rules of

Juvenile Procedure have no counterpart requiring the same manner of preservation." ***In re J.B.***, 106 A.3d 76, 91 (Pa. 2014). Indeed, "the current Rules of Juvenile Court Procedure—which 'govern delinquency proceedings in all courts'—are utterly silent as to how a weight of the evidence claim must be presented to the juvenile court so that it may rule on the claim in the first instance, which is . . . a necessary prerequisite for appellate review." ***Id***. at 98 (footnote omitted). Pa.R.J.C.P. 620(A)(2) governs the filing of what it expressly designates as an "optional post-dispositional motion." ***See*** Pa.R.J.C.P. 620(A)(2) ("Issues raised before or during the adjudicatory hearing shall be deemed preserved for appeal whether or not the party elects to file a post-dispositional motion on those issues.").

In the present case, unlike the juvenile in ***In re J.B.***, Appellant indeed did file an optional post-disposition motion pursuant to Pa.R.J.C.P. 620 on May 9, 2014, alleging, *inter alia*, that the verdict was against the weight of the evidence. The trial court considered the claim in its Pa.R.A.P. 1925(a) opinion. Thus, we address the issue.

Appellant argues that the testimony of Officer DePelligrin was inconsistent with the testimony of Detective Fusco, asserting that the officers "tell very different stories of the scene at the time that the firearms were discovered." Appellant's Brief at 21. Appellant cites passages of both officers' testimony and suggests that Officer DePelligrin "was adamant that all juveniles were detained on the bed," while Detective Fusco was "equally

adamant that it would've been very unsafe for this to have been the case."
*Id*. at 21. We have carefully reviewed the testimony and conclude that Appellant has isolated aspects of the testimony without considering the import of the totality.

Appellant emphasizes Detective Fusco's testimony that when he came upon the bedroom containing the four juveniles, he "didn't go into that room past the doorway." N.T., 4/1/14, at 49. Appellant fails to specify, however, that prior to that comment, Detective Fusco stated that he observed "two individuals in the closet in the back." *Id*. Moreover, the detective's testimony that he did not go into the room "past the doorway" indicates that he was at the entrance to the room. Detective Fusco stated that both Appellant and co-defendant T.W. "were inside the closet with at least one hand inside the closet. It appeared [Appellant] was pushing clothes on top of whatever was in the closet." *Id*. at 54. On cross-examination, Detective Fusco clarified that Appellant and T.W. "were actually with their butts on the bed leaning into the closet." *Id*. at 79. Both officers testified that at some point, the juveniles were handcuffed and taken out of the bedroom. Officer DePelligrin stated that the juveniles were handcuffed and "were detained on the bed." *Id*. at 28. Detective Fusco stated that "[t]hey were all detained in the room by me, but none of them were handcuffed and secured on the bed." *Id*. at 86.

> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our

review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015).

We have stated that "we must accept the juvenile court's findings that are supported by competent evidence of record, and we defer to the juvenile court on issues of credibility and weight of the evidence." ***A.N. v. A.N.***, 39 A.3d 326, 334 (Pa. Super. 2012); ***In re C.S.***, 63 A.3d 351, 358 (Pa. Super. 2013) ("We find that the juvenile court did not abuse its discretion in concluding that its sense of justice was not shocked.").

The juvenile court herein addressed and rejected Appellant's claim regarding the weight of the evidence, as follows:

Appellant asserts that undue weight was given to the police officers' testimony because it was inconsistent and refuted by Appellant. In support of his challenge to the weight of the evidence, Appellant does not identify facts of record that are so clearly of greater weight that to ignore them would be to deny justice.[3] Alternatively, Appellant pinpoints perceived weaknesses in the Commonwealth's case, specifically that the

---

[3] In Appellant's averment challenging the weight of the evidence in his post disposition motion, Appellant asserted only "that the inconsistent testimony of Officers DePelligrin and Fusco cannot be relied upon to support a finding that [Appellant] was in possession of any illegal items found within the closet." Post Disposition Motion for Reconsideration Pursuant to Pa.R.J.P. 620, 5/9/14, at 4.

- 16 -

police officers' testimony regarding the facts surrounding Appellant's detention is inconsistent and not worthy of belief.

First, Appellant asserts that Officer DePelligrin testified that the drugs were found in the bottom of a cluttered bedroom closet and then later contradicts himself by stating that the drugs were towards the top. T.T. at 18, 26. A careful review of the record reveals that Officer DePelligrin was referring to what was on the bottom of the closet. He clearly points out that it was cluttered with various things, one of them being the heroin. When questioned about where the heroin was found (among the things on the bottom of the closet), Officer DePelligrin states that they were found towards the top, "settled down in like a little bit ways." While Appellant chooses to interpret the officer's distinction of where the heroin was found *on the bottom of the cluttered closet*, their analysis is simply not correct. Further, the fact that one officer saw something that the other officer didn't see is not, by definition, inconsistent and in many cases can easily be attributed to their different positions when entering the house. Testimony indicated that Officer Fusco was ahead of Officer DePelligrin when entering the house and that there were certain tasks that officers in the back did that the first officers did not do. This Court found the officers' testimony to be clear and consistent especially concerning the matters or elements directly related to the crimes that Appellant was found guilty. "The trier of fact, in determining the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part, or none of the evidence." *Commonwealth v Griscavage*, 517 A.2d 1256 (Pa. 1986); *Commonwealth v Murray*, 334 A.2d 255 (Pa. 1975). This Court considered all matters presented and properly assigned the weight to be accorded to each piece of evidence presented in this case.

Juvenile Court Opinion, 9/19/14, at 7–8.

Reiterating that a motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court, our Supreme Court admonished that "[a] new trial should not be granted because of a mere conflict in the testimony . . . ."

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–1055 (Pa. 2013). The Supreme Court stated:

> In reviewing the entire record to determine the propriety of a new trial, an appellate court must first determine whether the trial judge's reasons and factual basis can be supported. Unless there are facts and inferences of record that disclose a palpable abuse of discretion, the trial judge's reasons should prevail. It is not the place of an appellate court to invade the trial judge's discretion any more than a trial judge may invade the province of a jury, unless both or either have palpably abused their function.
>
> To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must "examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury." Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Id*. at 1056.

We conclude that the juvenile court's decision did not constitute a palpable abuse of discretion. Rather, "notwithstanding all the facts, certain facts [were] so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Clay*, 64 A.3d at 1055. Thus, we conclude this issue is lacking in merit.

Dispositional order affirmed.

P.J. Gantman joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/1/2015</u>