**In the Interest of C.S., A Minor, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2013.
Filed March 5, 2013.

Ryan Lysaght, Harrisburg, for appellant.

Christopher Jason, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: BOWES, GANTMAN, and OLSON, JJ.

OPINION BY BOWES, J.:

C.S. appeals from the dispositional order entered in this matter following her adjudication of delinquency for acts constituting a violation of 18 Pa.C.S. § 3701(a)(1)(v), robbery-force however slight and theft. We affirm.

The juvenile court delineated the salient facts as follows.

On September 10, 2011, Cornelius McMullen (McMullen) was working as a store clerk at the Turkey Hill in Middletown, Pennsylvania (Turkey Hill) during the hours of 10:00 p.m. through 7:00 a.m. While he was working the night shift on September 10, 2011 the Juvenile entered the Turkey Hill at approximately 11:30 p.m. and started talking to McMullen. The Juvenile indicated to McMullen that they knew each other although McMullen was not sure whether he knew her.

McMullen and the Juvenile talked for about 20 minutes but McMullen started to realize that he did not know the Juvenile. At this point, the Juvenile asked McMullen to sell her a pack of Newport cigarettes. McMullen asked the Juvenile to provide him with identification to which she stated that she was drunk and had no identification or money. The Juvenile insisted that he should just give her the cigarettes to which McMullen rejected her request. As McMullen kept rejecting the Juvenile's request for cigarettes, the Juvenile responded that there was a man in her car that had a gun and demanded that McMullen give her the cigarettes. McMullen then felt threatened and stepped away to give the Juvenile access to the passage way to the area where the cigarettes were located, but the Juvenile grabbed some items in front of the cash register and left the Turkey Hill.

McMullen subsequently called his mother and then the store manager of the Turkey Hill, Ricky Perrine. Ricky instructed McMullen to call the police immediately and lock the front doors to the store to secure the crime scene. At the Juvenile's adjudication hearing the surveillance video from the Turkey Hill from the night of September 10, 2011 was presented as evidence. The video showed the Juvenile in the Turkey Hill talking to McMullen and later taking things from the counter in front of the cash register. The video surveillance tape further shows the Juvenile exiting the store and getting into a silver Audi driven by a male.

Sergeant Gregory R. Day (Sgt.Day) was called by the Derry Township Police dispatch center to respond to the robbery at the Turkey Hill. When Sgt. Day arrived at the scene he made contact with McMullen who made a verbal statement, and later a written statement, as to what happened. After obtaining McMullen's statement, Sgt. Day put out a brief press release with the suspect's description in it. Subsequently, Sgt. Day obtained the surveillance video from Turkey Hill which provided a picture of the Juvenile which was sent out in another press release. Sgt. Day then received several emails and telephone calls indicating that the Juvenile was the person in the surveillance video. Subsequently, Sgt. Day scheduled an interview with the Juvenile and her parents that was held on October 1, 2011.

At the interview, the Juvenile and her parents were read their *Miranda* warnings and Sgt. Day asked them if they would be willing to give statements without the presence of an attorney to which the Juvenile's father responded "ask away." During the interview, Sgt. Day showed the Juvenile a picture of the surveillance video and the Juvenile quickly responded, "Yes, that's me." Sgt. Day then asked the Juvenile what happened on the evening of September 10, 2011 and she explained that she was drinking at a party in a trailer court where she consumed vodka and approximately three shots of another alcoholic beverage. Thereafter, the Juvenile admitted to Sgt. Day that she went into the Turkey Hill after leaving the party and demanded cigarettes from McMullen. The Juvenile further admitted that when McMullen refused to give her the cigarettes that she tried to make small talk but then ultimately left the store stealing a lighter and a bag of chips. Juvenile Court Opinion, 6/26/12, 1–3.

The Commonwealth charged Juvenile in its petition with acts constituting theft and robbery under 18 Pa.C.S. § 3701(a)(1)(i) and (ii). The court adjudicated Juvenile delinquent for the commission of acts constituting theft and robbery-force however

slight, which is found at 18 Pa.C.S. § 3701(a)(1)(v). Thus, the juvenile court found Juvenile delinquent of a lesser robbery offense than that set forth in the juvenile petition. Thereafter, on May 10, 2012, the court conducted a dispositional hearing. Juvenile filed a post-dispositional motion on May 15, 2012, and the court denied that motion on May 21, 2012. This timely appeal ensued. The court directed Juvenile to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Juvenile complied, and the matter is now ripe for our review. Juvenile presents two issues for this Court's consideration.

I. Whether the evidence presented at Appellant's adjudication was insufficient to sustain a charge of robbery, as a felony of [the] third degree, where the Commonwealth failed to prove that Appellant used force, however slight, to take items from a convenience store?

II. Alternatively, whether the adjudication was against the weight of the evidence so as to shock one's sense of justice as the Commonwealth failed to prove that Appellant used force to obtain items from a convenience store?

Juvenile's brief at 5.

■ Our review of a sufficiency claim is guided by the following legal principles.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*In re T.B.*, 11 A.3d 500, 504 (Pa.Super.2010). However, Juvenile's challenge to the sufficiency of the evidence is premised on her statutory interpretation of the robbery statute. Statutory interpretation presents a question of law and is evaluated *de novo*. *Commonwealth v. Sarapa*, 13 A.3d 961, 962 (Pa.Super.2011).

Juvenile argues that the plain language of the robbery statute does not support a finding that a threatening statement constitutes force however slight where no actual force occurred. According to Juvenile, the legislature has separated robbery crimes involving threatening behavior and robbery by physical taking or removing property by force, however slight. Specifically, she asserts that the different grading for the various robbery crimes "signifies how threats are to be considered separately from force and adjudicated according to this differential grading." Juvenile's brief at 12.

■ Comparing the various robbery provisions, Juvenile contends that actual force is necessary to establish robbery under 18 Pa.C.S. § 3701(a)(1)(v). Juvenile continues that she never made physical

contact with Mr. McMullen and only took items from the store counter. Since these items were not on Mr. McMullen's person, she reasons that the Commonwealth did not prove the force element of robbery.

The Commonwealth counters that the force necessary under the statute may be constructive force. Relying on *Commonwealth v. Brown*, 506 Pa. 169, 484 A.2d 738 (1984), it posits that conduct or words that are threatening that cause a person to relinquish property meet the force requirement of the applicable robbery statute. Since Juvenile threatened Mr. McMullen by informing him that her compatriot outside possessed a gun and, he then stepped back and yielded the property, the Commonwealth reasons that it established constructive force.

We recently reiterated the guiding principles we follow in ascertaining the meaning of statutory language in *Commonwealth v. Velez*, 51 A.3d 260 (Pa.Super.2012). Therein, we stated,

> Our task in construing a statute is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Id.* at 266. The *Velez* Court continued:

> where the words of the statute are not explicit, the intention of the legislature may be discerned by examining: (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative

and administrative interpretations of such statute. 1 Pa.C.S. § 1921. Additionally, "we are required to strictly construe criminal statutes. 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241 (2006). Any doubt as to a criminal statute's meaning is to be resolved in favor of the defendant. *Commonwealth v. Graham*, 607 Pa. 580, 9 A.3d 196, 202 n. 13 (2010)." *Commonwealth v. Greene*, 25 A.3d 359, 361 (Pa.Super.2011) *[, appeal granted,* —— Pa. ——, 52 A.3d 222 (2012) ].

*Id.* at 266–267.

The robbery statute reads in its entirety,

**a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v) physically takes or removes property from the person of another by force however slight; or

(vi) takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

(2) An act shall be deemed "in the course of committing a theft" if it occurs

in an attempt to commit theft or in flight after the attempt or commission.

(3) For purposes of this subsection, a "financial institution" means a bank, trust company, savings trust, credit union or similar institution.

**(b) Grading.**—Robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

18 Pa.C.S. § 3701.

The critical inquiry in this case is whether Juvenile's threat and removal of the items from the store counter are sufficient to constitute physically taking or removing property from a person by force however slight. The term "force" only explicitly appears in the robbery statute under section (a)(1)(v), but is implicit in the remaining sections. The statute itself does not define force nor does it expressly indicate that only actual physical force is necessary. To the extent that Juvenile argues that force plainly means actual physical force, we disagree that this interpretation is self-evident. Accordingly, we proceed to discern the meaning of the statutory provision based on the aforementioned settled principles of statutory construction.

In *Brown, supra,* our Supreme Court outlined the history of the crime of robbery in Pennsylvania and the statutory section at issue herein. The Court noted that before the adoption of the 1972 Crimes Code, robbery was not statutorily defined and remained a common law crime. Under the common law, robbery was "the felonious and forcible taking from the person of another of goods or money to any value by violence or putting in fear." *Brown, supra* at 740 citing *Commonwealth v. Darcy,* 362 Pa. 259, 278, 66 A.2d 663, 673 (1949); *Commonwealth v. Dantine,* 261 Pa. 496, 498, 104 A. 672, 673 (1918); *Commonwealth v. Snelling,* 4 Binn. 379 (1812); *see also Commonwealth v. Farmer,* 241 Pa.Super. 373, 361 A.2d 701, 703 (1976) (Spaeth, J. dissenting). The 1972 Crimes Code, however, altered the definition of robbery by setting forth the crime as defined in the current statute under sections (a)(1)(i) through (a)(1)(iii). The provision at issue in this matter was left out of the statutory definition. Subsequently, the legislature amended the robbery statute by adding sections (a)(1)(iv) and (a)(1)(v).

The *Brown* Court opined that these additions reinstated the common law standard and "eliminated the vexing problem of determining the amount of force required to commit a robbery." *Brown, supra* at 741. The Court continued its discussion of the provision under consideration here, asserting that force "may be either actual or constructive." Relying on precedent dating back to 1812, the Court stated, "Actual force is applied to the body; constructive force is the use of threatening words or gestures, and operates on the mind." *Id.* citing *Snelling, supra; see also McElrath v. Commonwealth,* 405 Pa.Super. 431, 592 A.2d 740, 745 (1991). Indeed, it is an over-two-hundred-year-old rule that "if the thief induces the party robbed to throw down his purse through fear, and then takes it up, it is a forcible taking from the person. In such case, the purse is not actually taken from the person, nor is there any force in the act of taking it up from the ground." *Snelling, supra.*

Viewing the evidence in a light most favorable to the Commonwealth, the store clerk backed away from the counter, based on Juvenile's threat that her compatriot would use a gun, so that Juvenile could retrieve the cigarettes she demanded. Instead, Juvenile stole a lighter and bag of chips. Thus, the clerk yielded store property after being threatened by Juvenile.

This is analogous to a victim who sets down his property due to fear and the property is taken by the assailant. Thus, we hold that Juvenile's actions meet robbery pursuant to 18 Pa.C.S. § 3701(a)(1)(v), and she is not entitled to relief.

■ Juvenile's remaining issue is a weight-of-the evidence challenge. We recently set forth our standard of review in examining a weight claim.

> [W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003) (citations omitted). Hence, a trial court's denial of a weight claim "is the least assailable of its rulings." *Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 880 (2008). Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve. *Commonwealth v. Tharp*, 574 Pa. 202, 830 A.2d 519, 528 (2003). As our Supreme Court has further explained,

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the

verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 752 (2000) (citations omitted). In addition, a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood*, 982 A.2d 483, 494, 982 A.2d 483 (2009).

*Commonwealth v. Lofton*, 2012 PA Super 267, 57 A.3d 1270, 1273.

■ Juvenile argues that the store surveillance video does not indicate that the clerk was threatened when he stepped back from Juvenile nor does it "clearly depict [Juvenile's] use of force." Juvenile's brief at 16.[1] She posits that the video does not show her motioning to the car in the parking lot or pointing her fingers "to signify a gun." *Id.* Hence, Juvenile contends that the physical evidence is questionable. Next, Juvenile maintains that she never admitted to threatening the clerk and that the clerk has a history of dishonest acts and *crimen falsi* adjudications. Juvenile suggests that

---

1. We note that the surveillance video is not in the certified record on appeal; therefore, this Court was unable to view the video.

the clerk falsely informed police that he was threatened to avoid getting into trouble for allowing Juvenile to take the items after he flirted with her. Juvenile cites no case law in support of her position aside from a boilerplate reciting of our standard for appellate review.

The Commonwealth replies that the court found the store clerk credible and that the video confirmed his account of what transpired. It points out that the clerk did back away from Juvenile and the cash register and showed Juvenile take the items from the store. After leaving, Juvenile fled in a vehicle driven by a male, whom she had told the clerk possessed a gun. Further, the Commonwealth highlights that the store clerk told the identical story to both police and his store manager. Finally, the Commonwealth argues that the clerk immediately ceased any flirting once Juvenile threatened him.

We find that the juvenile court did not abuse its discretion in concluding that its sense of justice was not shocked. This matter is simply not a case where certain facts introduced are so clearly of greater weight than the facts resulting in the adjudication that to ignore them or to give them equal weight with all the facts would be to deny justice. The surveillance video apparently confirmed the store clerk's account of events. The clerk was consistent in his oral and written statements to police as well as his statement to his store manager. The juvenile court determined this testimony to be credible, and Juvenile admitted to taking the items. Instantly, Juvenile merely asserts that the evidence should be interpreted in a different manner and, in effect, asks this Court to act as a fact-finder. We decline to do so.

Order affirmed.