J-A13037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BYRON HALL | |
| Appellant | No. 1628 WDA 2013 |

Appeal from the Judgment of Sentence February 19, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006612-2012

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                          **FILED JULY 10, 2015**

Byron Hall appeals the judgment of sentence imposed February 19, 2013, in the Allegheny County Court of Common Pleas.  Hall was sentenced to an aggregate term of seven to 14 years' imprisonment following his non-jury convictions of attempted murder, aggravated assault (two counts), recklessly endangering another person (three counts), and criminal conspiracy,[1] for his involvement in an April 2012 shooting.  On appeal, Hall challenges the sufficiency of the evidence supporting all of his convictions, and the weight of the evidence supporting his convictions of attempted murder and criminal conspiracy.  For the reasons set forth below, we affirm.

_____

[1] 18 Pa.C.S. §§ 901, 2702(a)(1), 2705, and 903, respectively.

The facts underlying Hall's arrest and conviction are as follows. At approximately 1:00 p.m., on April 14, 2012, William Bosley pulled his car into the carport of the Carnegie Towers apartments, in Carnegie Borough, Allegheny County. Bosley's cousin, Tyler Dorsey, was asleep in the backseat with a two-month old baby. A second vehicle was parked in the carport so that Bosley could not proceed through. After a few minutes, co-defendant James Edmonds got out of the driver's side of the first vehicle and Hall emerged from the passenger's side. At the same time, a third co-conspirator, Rasheed Watson, came out of the lobby of the apartment building.

In surveillance video from the scene,[2] Watson can be seen greeting Edmonds as they pass each other behind Edmonds' car. Hall, meanwhile, proceeded to the driver's side of Bosley's car, and appeared to say something to the occupants. Bosley's car began to slowly reverse, and Hall moved his hand to the door handle, as if to prevent the victims from leaving. At the same time, Watson pulled out a gun and began shooting at Bosley's car. When he did so, Hall appeared to calmly back away and rejoin Edmonds near the apartment entrance. Bosley frantically drove the car in

_____

[2] The entire incident was captured on the apartment complex's surveillance videotape. The day after the shooting, Allegheny Police Detective Michael Feeney copied the relevant portion of the video onto a USB thumb drive, which was later admitted into evidence at Hall's trial. *See* N.T. 11/19-20/2012, at 30-33. The trial court, sitting as fact finder, reviewed the surveillance video during the course of the trial.

reverse away from the scene. Watson then quickly fled on foot past the apartment lobby entrance as Hall and Edmonds entered the building together. A short time later, the police arrived, and arrested Hall and Edmonds when they emerged from the Carnegie Towers building. Both were identified on the surveillance videotape, and Watson was later apprehended. All three occupants of Bosley's vehicle suffered gunshot wounds.

Hall and Edmonds were tried together.[3] On November 20, 2012, the trial court, sitting without a jury, returned a verdict of guilty on all charges for both co-defendants.[4] Hall filed a timely motion to reconsider his conviction of attempted homicide, which the trial court denied on November 30, 2012. He was sentenced, on February 19, 2013, to an aggregate term of seven to 14 years' imprisonment.[5] Hall filed a timely post sentence motion, and, upon leave of court, a supplemental post sentence motion. By

_____

[3] Watson entered a negotiated guilty plea to charges of attempted murder, aggravated assault, REAP and conspiracy. *See* Commonwealth's Brief at 2 n.6.

[4] Edmonds' direct appeal is pending before this Court at Docket No. 1747 WDA 2013.

[5] Specifically, the trial court imposed a sentence of seven to 14 years for the count of attempted murder, a concurrent sentence of three to six years for each count of aggravated assault, and no further penalty for the remaining charges.

order dated October 4, 2013, the trial court denied both motions, and this timely appeal followed.[6]

In his first four issues, Hall challenges the sufficiency of the evidence to support his convictions of conspiracy, attempted murder, aggravated assault and REAP.

> In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [fact finder's] beyond a reasonable doubt. *Commonwealth v. Murray*, [623] Pa. [506], 83 A.3d 137, 150–51 (2013). Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is de novo and our scope of review is plenary. *Id.* at 151.

*Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014), *cert. denied*, 135 S. Ct. 1400 (U.S. 2015).

We begin with Hall's conviction of criminal conspiracy. To sustain a conviction for criminal conspiracy, the Commonwealth must prove:

> 1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy. *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super.2011). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa.Super.2002) (citation omitted).

_____

[6] On October 28, 2013, the trial court ordered Hall to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After being granted an extension of time until the notes of testimony were transcribed, Hall filed a concise statement on June 27, 2014.

*Commonwealth v. Knox*, 50 A.3d 749, 755 (Pa. Super. 2012), *aff'd*, 105 A.3d 1194 (Pa. 2014). *See* 18 Pa.C.S. § 903. The Commonwealth need not establish a formal or explicit agreement between the defendant and his co-conspirators, rather it is well-settled that:

> [A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Id.* (citation omitted).

Here, Hall contends there was no evidence demonstrating he agreed with Watson and Edmonds to shoot the victims, or that he was even aware Watson intended to commit a crime. Hall asserts "[t]he only evidence established at trial was that Edmonds and [he] arrived together that day, that Edmonds greeted the shooter, and that [Hall] moved towards the car and put his hand on a door." Hall's Brief at 2. Further, he emphasizes that when he approached the victim's car, it started to back up, and when he put his hand on the door "momentarily as the shooting began … he was actually hit in the hand by the gunfire."[7] *Id.* Hall maintains the evidence

_____

[7] While Hall asserts he was hit in the hand by gunfire, there was no evidence of this fact presented during the non-jury trial.
*(Footnote Continued Next Page)*

demonstrated only his presence at the scene, and a possible association between Watson and Edmonds. Therefore, he concludes, the evidence was insufficient to support his conviction of conspiracy to commit aggravated assault.[8]

Conversely, the Commonwealth responds that the "'web of evidence' was sufficient to support the inference that [Hall] was aware of Watson's plan to shoot the victims." Commonwealth's Brief at 19. It emphasizes (1) "the coordinated exit of the three men as soon as the victims arrived at the scene," (2) Hall's approach of the victim's vehicle and attempt to grab the car door, and (3) Hall's lack of fear or alarm when the shooting began. *Id.* Accordingly, the Commonwealth maintains the totality of the circumstances "exhibit the presence of an implicit agreement among the men to cause, at a minimum, serious bodily injury to the victims." *Id.* at 20.

Our review of the record, and in particular the surveillance videotape from the shooting, reveals ample evidence to support the inference that Hall entered into an agreement with Watson and Edmonds to cause serious bodily injury to the victims. First, the video shows Hall and Edmonds arrive at the Carnegie Towers, and park in the carport leaving little to no room for the victim's car, which arrives approximately two minutes later, to proceed

*(Footnote Continued)* ────────────────

[8] We note the trial court did not specifically address Hall's challenge to his conspiracy conviction in its Pa.R.A.P. 1925(a) opinion.

through.  *See* Surveillance Videotape (Carport by Door) at 15:08:20-15:11:13.  Shortly thereafter, Hall and Edmonds leave their car as Watson emerges from the apartment building.  *Id.* at 15:11:16; (Carport Far Side) at 15:11:16.  On the video, it appears as if Hall looks at Watson, and then moves towards the victim's car, as Watson and Edmonds greet each other behind Edmonds' car.  *Id.* at 15:11:25-15:11:26; (Carport Far Side) at 15:11:25-15:11:26.  Next, Hall seems to say something to the occupants of the car, which begins to slowly back up as Watson approaches.  *Id.* (Carport Far Side) at 15:11:28.  The video then shows Hall put his hand on the driver's side door handle, immediately before Watson pulls out a gun and begins shooting at the victims' car.  *Id.* at 15:11:30.  Hall then backs away from the vehicle, and watches as Bosley frantically attempts to drive away in reverse with Watson in pursuit.  *Id.* at 15:11:32.  The video then displays Hall calmly rejoining Edmonds near the entrance of the apartment building, and watching as Watson flees past them.  *Id.* at 15:11:42.

The "coordinated exit"[9] of the three conspirators when the victim's car arrived, Edmonds' greeting of Watson as they passed each other, Hall's move to grab the victims' car door, and Hall's calm demeanor, demonstrating no apparent alarm when the shooting began, all support an inference that the conspirators were working together, and entered an

_____

[9] Commonwealth's Brief at 19.

agreement to cause serious bodily harm to the victims. Further, Watson's firing of the weapon supplied the requisite overt act in furtherance of the conspiracy. Accordingly, we conclude that Hall's challenge to his conspiracy conviction fails.

Next, Hall challenges the sufficiency of the evidence supporting his conviction of attempted murder.

"A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act.'" ***Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa. Super. 2008) (citation omitted), *appeal denied*, 967 A.2d 958 (Pa. 2009). ***See*** 18 Pa.C.S. §§ 901, 2702. Where, as in the present case, the defendant's culpability is based upon an accomplice theory, the Commonwealth must also establish that the defendant "with the intent of promoting or facilitating the commission of the offense … aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing" the crime. 18 Pa.C.S. § 306(c)(1)(ii). This Court has previously explained:

> [I]n order to impose this form of criminal liability the individual "must be an active partner in the intent to commit [a crime]." Further, an accomplice "must have done something to participate in the venture." Lastly, "mere presence at the scene is insufficient to support a conviction: evidence indicating participation in the crime is required." Most importantly, the law requires some proof that a party was an active participant in a criminal enterprise in order to impose accomplice liability. Such a finding cannot be based upon mere assumption or speculation.

***Commonwealth v. Lambert***, 795 A.2d 1010, 1024 (Pa. Super. 2002) (citation omitted), *appeal denied*, 805 A.2d 521 (Pa. 2002).

Hall maintains "[t]here is nothing in the record indicating that [he] intended to aid or promote the commission of the crime." Hall's Brief at 5. Rather, he claims the videotape shows only that (1) he arrived in Edmonds' car, which was parked with enough room for another vehicle to pass; (2) he recognized the shooter and the victim;[10] and (3) "he was walking beside the [victim's] car at the time that the shooting happened." *Id.* Further, he argues that when he approached the victim's car, it actually began to back up so that his actions made the "vehicle a more difficult target to hit and [made] the victim's escape easier," by "putting them on guard." *Id.* at 6, 7. Moreover, Hall contends "his willingness to remain at the scene of the crime should be presumed to show a lack of guilt as regards [to] the shooting." *Id.* at 7.

However, Hall's argument is based entirely on **his interpretation** of his actions on the surveillance videotape. However, the trial judge, who sat as fact finder in Hall's non-jury trial, viewed his actions differently. *See Commonwealth v. Robinson*, 33 A.3d 89, 94 (Pa. Super. 2011) (stating

---

[10] This acknowledgement, that Hall recognized the shooter, contradicts his argument in another section of his brief, challenging his aggravated assault conviction, in which he asserts that he "gave no indication of recognizing the shooter" in the surveillance video. Hall's Brief at 9. *See also id.* at 2 (stating that in the video "he did not look at Mr. Watson upon leaving his vehicle"). Upon our review of the video, however, it appears Hall looks at Watson as Watson exits the apartment building. *See* Surveillance Videotape (Carport by Door) at 15:11:25-15:11:26.

that when a defendant is convicted following a non-jury trial, "[t]he trial court's verdict must be accorded the same legal effect as a jury verdict."), *appeal denied*, 42 A.3d 292 (Pa. 2012). The court found that "[t]he video of the incident showed [Hall] holding the victims' car door closed while Watson shot into the car." Trial Court Opinion, 10/7/2014, at 5. These actions, the court opined, demonstrated his culpability as an accomplice. In asserting that the video should be interpreted in a different manner, Hall is essentially asking "this Court to act as a fact-finder," which we decline to do. ***In re C.S.***, 63 A.3d 351, 358 (Pa. Super. 2013).

Rather, our review of the surveillance videotape confirms that Hall approached the driver's side of the victims' vehicle, appeared to say something to the occupants, and briefly put his hand on the door handle as the car began to reverse, immediately before Watson pulled out a gun and began shooting. Surveillance Videotape (Carport by Door) at 15:11:28-15:11:31. This, coupled with his apparent lack of alarm or concern when the shooting began, was sufficient to demonstrate Hall "attempt[ed] to aid" Watson in the shooting. 18 Pa.C.S. § 306(c)(1)(ii). Further, Watson's actions in pointing a gun directly at Bosley and repeatedly firing it, was sufficient to demonstrate Watson possessed the specific intent to kill Bosley. ***See Commonwealth v. Robertson***, 874 A.2d 1200, 1207 (Pa. Super. 2005) ("[S]pecific intent to kill may be inferred from the fact that the accused used a deadly weapon to inflict injury to a *vital* part of the victim's body."). Therefore, Hall, as his accomplice, was legally responsible for

- 10 -

Watson's crimes. **See Lambert**, **supra**, 795 A.2d at 1024 ("The very nature of accomplice liability is that one who actively and purposefully engages in criminal activity is criminally responsible for the criminal actions of his/her co-conspirators which are committed in furtherance of the criminal endeavor.") (citation omitted). Accordingly, because we conclude the trial court's findings are supported by the record, we agree that no relief is warranted on this claim.

In his third and fourth issues, Hall challenges the sufficiency of the evidence supporting his remaining convictions of aggravated assault and REAP. We will address these claims together.

Pursuant to the Crimes Code, a person may be convicted of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Moreover, a person is guilty of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Again, the trial court found Hall guilty of these crimes under an accomplice theory of liability. **See** Trial Court Opinion, 10/7/2014, at 6.

Similar to his previous issues, Hall argues the evidence did not support a finding that he was aware the shooting was about to occur. With regard to

his aggravated assault conviction, he asserts his actions as depicted on the videotape "gave no indication [he] recognize[ed] the shooter,"[11] and when he approached the victims' vehicle, he essentially alerted the victims to a possible attack. Hall's Brief at 9. Further, he emphasized that he put his hand on the door when the car was already in motion, and he was actually injured in the shooting. *Id.* With regard to his convictions of REAP, Hall states he displayed no "reckless engagement" because there was "no evidence on the record proving [he] had knowledge that a gun would be shot into the vehicle[.]" *Id.* at 11.

In addressing Hall's challenges to these convictions, the trial court found that Hall's actions, as evident on the surveillance video, demonstrated he was an accomplice to Watson's crimes. The court opined: "Holding three (3) people in a car while another man fires bullets into that car clearly demonstrate an extreme indifference to the value of human life, and placed the passengers in danger of death and serious bodily injury." Trial Court Opinion, 10/7/2014, at 6. We agree. Our review of the surveillance videotape reveals ample support for the trial court's findings. Consequently, Hall's third and fourth issues fail.

In his last claim, Hall argues the trial court's verdicts on the charges of attempted murder and conspiracy were against the weight of the evidence.

---

[11] *See supra*, n.9.

It is well-settled that when reviewing a weight of the evidence claim,

> an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S. Ct. 1792 (U.S. 2014). For that reason, "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012), *appeal denied*, 69 A.3d 601 (Pa. 2013) *(citations omitted). See* Pa.R.Crim.P. 607.

Here, upon our review of the certified record, we find Hall failed to preserve his challenge to the weight of the evidence either during sentencing, or in his initial or supplemental post-sentence motion. Accordingly, Hall's final claim is waived for our review.[12] *See Lofton*,

_____

[12] It merits mention that in paragraph six of his supplemental post-sentence motion, Hall raised a general claim asserting, "[t]he Commonwealth's case was very weak." Supplemental Post-Sentence Motion, 6/20/2013, at ¶ 6. While this might be construed as a challenge to the weight of the evidence, although not specifically designated as so, we note that during the post-sentence hearing, the trial court construed the claim as a sufficiency argument, a characterization with which Hall's counsel agreed. *See* N.T., 9/26/2013 & 9/30/2012, at 8 (THE COURT: So is this [referring to issue number six] a sufficiency argument also? [Hall's Counsel]: … I would say so, Your Honor."). Nevertheless, even if we were to find that Hall properly preserved such a claim, we would conclude that he failed to demonstrate the trial court abused its discretion in denying his weight claim. *See* Trial Court Opinion, 10/7/2014, at 6-8. *See also Lyons*, *supra*.

*supra*, 57 A.3d at 1273 ("Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.") (citation omitted).

Accordingly, because we conclude none of the claims raised by Hall in this appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/2015