J-S06005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  A.J., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1692 EDA 2019 |

Appeal from the Order Entered June 6, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-JV-0000203-2019

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 09, 2020**

A.J. appeals from the trial court's dispositional order[1] following his adjudication of delinquency for two counts each of theft by unlawful taking[2] and receiving stolen property[3] and one count each of simple assault[4] and the summary offense of harassment.[5]  After careful review we affirm.

On April 1, 2019, G.H., the victim, was at his home located in Perkasie, Pennsylvania.  Sometime in the early afternoon he invited his friend, E.I., over to his house.  Without the victim's knowledge, E.I. brought A.J. with him.  G.H.

---

[1] The order encompassed both the instant charges and A.J.'s violation of a previously-imposed term of probation.

[2] 18 Pa.C.S. § 3921(a).

[3] 18 Pa.C.S. § 3925(a).

[4] 18 Pa.C.S. § 2701(a)(1).

[5] 18 Pa.C.S. § 2709(a)(1).

was not comfortable with A.J. being in his home and unsuccessfully attempted to close the door before he entered the house. The three boys watched television for ten to fifteen minutes in the living room, after which A.J. left the room and went into the victim's mother's bedroom. In her bedroom, A.J. removed a pink iPhone from the victim's mother's dresser and placed it in his pocket. A.J. then entered the victim's bedroom and removed a painting from the wall. Feeling intimidated by A.J., the victim told A.J. that he could have the painting. According, to E.I., the victim appeared "scared" of A.J. at this time.

Before leaving the victim's house, A.J. lit a cigarette and flicked it in the living room before he allegedly flushed it down the toilet. E.I. and the victim testified that A.J. also forcibly grabbed the victim's arm and held a lit cigarette on his wrist for approximately five seconds. A.J. then asked the victim to retrieve a pair of scissors from the kitchen; A.J. held the victim down and cut his hair against his will, telling him that he was "going to make [him] look less gay." As A.J. left the house with the painting and pink cell phone, he told the victim, "don't call the police or I'll have killers at your door."

Shortly after 2:00 p.m. on the same day, Officer Scott Fields was called to the scene. There, Officer Fields spoke with the victim's mother, who told him that her son had been assaulted with a lit cigarette and that his hair had been cut against his will. Upon entering the victim's residence, Officer Fields observed a burn mark on the inside of the victim's wrist, located a cigarette with a "smushed" end on the bookshelf in the victim's room, noted that the

victim's hair appeared to have been cut in a random manner, and saw human hair on the rug in the living room. E.I. gave the following statement to Officer Fields: "Me [sic] and A.J.[,] we were in [the victim's] house hanging out and a couple things were said back and forth[,] so I left not wanting to be a part of an[y]thing going on." Exhibit D-2 (entered at adjudicatory hearing on 4/18/19). The victim also gave a statement later in the day in which he stated that A.J. "went through [his] mom's stuff[,] her drawers[,] and proceeded to steal an [i]Phone and a painting in [his] room. A.[J.] threatened to beat [him] up . . . [and] burned [him] with a cigarette on [his] wrist and before [he] left [A.J.] cut [the victim's] hair with a pair of scissors and threatened to have people kill [him] if [he] ratted to the police." Exhibit D-1 (entered at adjudicatory hearing on 4/18/19).

On April 18, 2019, the court held an adjudicatory hearing where the victim, E.I.,[6] Officer Fields, and A.J. testified.[7] At the conclusion of the hearing, the court adjudicated A.J. delinquent on the above-stated charges and detained A.J. for twenty days pending disposition. On May 6, 2019, the court held a dispositional hearing, after which the court placed A.J. on indefinite probation with electronic monitoring, ordered him to pay restitution

_____

[6] E.I. first refused to testify, stating that he feared for his and his family's safety if he were to testify against A.J. The court instructed E.I. to answer the questions truthfully, took a 15-minute recess and then continued questioning E.I.

[7] Pictures of the victim's wrist burn, his hair, the cigarette with the "smushed" end, and pieces of hair on the living room carpet were admitted at the adjudicatory hearing as exhibits.

to the victim in the amount of $170.00, prohibited him from having contact with the victim, and ordered him to participate in the Community Service Foundations Restorative Reporting Center Program. On May 16, 2019, A.J. filed timely post-dispositional motions seeking a new adjudicatory hearing based on a weight of the evidence claim. *See* Pa.R.J.P. 620(a)-(b). Following a hearing on June 6, 2019, the court orally denied the motions.[8]

A.J. filed a notice of appeal on June 12, 2019, and a timely court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. A.J. raises the following issues for our review:

> A. Was A[.J.'s] adjudication of delinquency for simple assault, theft by unlawful taking, receiving stolen property and harassment, a summary offense, against the weight of the evidence[9] for the following reasons:
>
> > i. Commonwealth witness G.H.'s testimony contained consequential inconsistencies and omissions compared to the statements he gave to police on the day of the alleged incident;
> >
> > ii. Commonwealth witness G.H.'s testimony regarding the location of the cigarette used by A[.J.] to burn his arm contradicted Officer Scott Field's testimony regarding the

---

[8] On June 24, 2019, our Court issued a rule to show cause why this appeal should not be quashed due to the fact that the trial court had not issued a written order denying A.J.'s post-dispositional motions. On June 25, 2019, the trial court entered a written order denying A.J.'s motion. Thus, we find that the appeal is properly before us. *See* Pa.R.A.P. 905(a)(5).

[9] A.J. has properly preserved his weight of the evidence claim, for purposes of appeal, by raising it in his post-dispositional motions. *See* Pa.R.J.P. 415(A)(3) (claim that ruling on offense or adjudication of delinquency against weight of evidence shall be raised with juvenile court judge by oral motion, written motion, or post-dispositional motion pursuant to Rule 620(A)(1)).

location where he found the cigarette during his investigation;

iii. Commonwealth witness E.I.'s testimony contained consequential inconsistencies and omissions compared to the statements he gave to police on the day of the alleged incident;

iv. Commonwealth witness E.I. contradicted his own testimony during the hearing, [where] E.I. first testified that he had no recollection of what happened during the incident, however, he later changed his testimony after the Commonwealth was allowed a recess during his direct-examination in order to influence his testimony by threatening E.I. with a crime if he did not testify consistently with the Commonwealth's version of events; and

v. Commonwealth witnesses E.I. and G.H. testified inconsistently regarding the time of day the incident occurred, and the duration of time that elapsed from when A[.J.] entered G.H.'s residence to the time he left the residence.

B. Did the Superior Court abuse its discretion in refusing to remand this matter to the trial court for a new delinquency hearing where the Commonwealth presented the defense with after-discovered DNA evidence which proved that A[.J.] was innocent of the charges?

Appellant's Brief, at 4-5.

A.J.'s first claim challenges the weight of the evidence to support his adjudications. Specifically, he contends that because the Commonwealth's juvenile witnesses' testimony was "replete with inconsistencies"[10] and an adult

_____

[10] In his post-dispositional motion hearing, A.J. argued that the juvenile witnesses' testimony with regard to the timeframe when the event in question occurred, whether A.J. took the victim's cell phone forcefully out of his hand during the event, and the location of the cigarette that A.J. used to burn the victim demonstrated inconsistencies and contradictions between their police statements and in-court testimony. *See* N.T. Post-Dispositional Motion Hearing, 6/6/19, at 3-23.

witness improperly bolstered the complainant's testimony, he is entitled to a new adjudicatory hearing.

In *In re J.B.*, 106 A.3d 76 (Pa. 2014), our Supreme Court set forth the proper standard and scope of review for weight of the evidence claims in juvenile adjudications as follows:

> [T]he general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial. In reviewing a trial court's adjudication of a weight of the evidence claim, "an appellate court determines whether the trial court abused its discretion based upon review of the record; its role is not to consider the underlying question in the first instance. Thus, a weight of the evidence claim must be presented to the trial court so that it may address it in the first instance."
>
> Once a weight of the evidence claim has been presented to the trial court, it then reviews the evidence adduced at trial and determines whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." A trial court should award a new trial if the verdict of the fact finder "is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Stated another way, "[a] weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." These principles have been deemed equally applicable to the adjudication of weight of the evidence challenges brought in juvenile court proceedings.

*Id.* at 95 (citations and quotations omitted).

While there undoubtedly were inconsistencies between the Commonwealth's key juvenile witnesses' testimony before and during trial, the victim's and E.I.'s testimony at trial was internally consistent regarding the injuries the victim sustained at the hands of A.J. on the day in question.

In ***In the Interest of J.M.***, 89 A.3d 688 (Pa. Super 2014), our Court reiterated the well-established principle that "a [juvenile] court's denial of a weight claim is the least assailable of its rulings. Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve." ***Id.*** at 692 (citing ***In re C.S.***, 63 A.3d 351, 357 (Pa. Super. 2013)). After a comprehensive review of the record, including the notes of testimony from the adjudicatory, dispositional and post-dispositional hearings, we cannot conclude that the court palpably abused its discretion by rejecting A.J.'s weight of the evidence claim where the evidence was not so one-sided or so weighted in favor of acquittal. The court properly resolved any conflicts in the evidence and contradictions in witness testimony. Accordingly, we find no merit to this issue.

In his final claim on appeal, A.J. contends that we must remand the matter for a new adjudicatory hearing so that the trial court can consider after-discovered DNA test results obtained from the cigarette with a "smushed" end found in the victim's bedroom. On September 5, 2018, A.J. filed a motion for remand based on after-discovered evidence that became available after the instant appeal had been filed. Specifically, DNA analysis of the cigarette indicated that the DNA did not match that of A.J. A.J. argues that remand is appropriate because the Commonwealth "used this cigarette to vigorously argue [A.J.'s] guilt and . . . this physical evidence was so central to the court's reasoning and findings of guilt." Appellant's Brief, at 9.

In ***Commonwealth v. Pagan***, 950 A.2d 270, (Pa. 2008), the Pennsylvania Supreme Court set forth the factors used to analyze an after-discovered evidence claim:

> To obtain relief based on after-discovered evidence, appellant must demonstrate that the evidence:  (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Id.*** at 292.  Instantly, the Commonwealth concedes that the DNA evidence could not have been discovered prior to the end of the adjudication.  However, we conclude that a different determination would not likely result if a new adjudicatory hearing were granted based on this after-discovered evidence.  Here, the subject cigarette is not necessarily the same cigarette that was used to burn the victim.  A.J. testified that he flushed down the toilet the cigarette that he smoked in the victim's house on the day of the incident.  Therefore, it was just as likely that the cigarette A.J. used to burn the victim's wrist was the one he flushed down the toilet and not the one found in the bedroom.  Thus, evidence regarding the lack of A.J.'s DNA on the "smushed-end" cigarette would not likely exonerate him.  We find this claim, too, lacks merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/20