J-S67028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| GEORGE R. BLACKWELL, | : : | |
| Appellant | : | No. 3652 EDA 2016 |

Appeal from the Judgment of Sentence May 24, 2016
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000481-2016,
CP-09-CR-0001086-2016, CP-09-CR-0004428-2015

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:                **FILED DECEMBER 19, 2017**

In these consolidated cases, George R. Blackwell ("Blackwell") appeals from the judgment of sentence imposed following his conviction of two counts of retail theft, and one count each of robbery, simple assault, theft by unlawful taking, receiving stolen property, and possessing an instrument of crime.[1]  We affirm.

---

[1] **See** 18 Pa.C.S.A. §§ 3929(a)(1); 3701(a)(1)(ii); 2701(a)(1); 3921(a); 3925(a); 907(a).

---

* Former Justice specially assigned to the Superior Court.

The trial court set forth the relevant factual and procedural history underlying this appeal in its Opinion, which we incorporate herein by reference. *See* Trial Court Opinion, 4/10/17, at 1-7.[2]

Following the denial of his post-sentence Motions, Blackwell timely filed a Notice of Appeal. In response, the trial court ordered Blackwell to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Blackwell timely filed a Concise Statement.

On appeal, Blackwell presents the following questions for our review:

A. Whether the trial court abused its discretion when it sentenced [Blackwell] to a manifestly excessive sentence of consecutive sentences[,] in [the] retail theft cases[,] to a period of sixty-three months to one hundred and twenty-six months of incarceration?

B. Whether the trial court abused its discretion by imposing a life sentence without the possibility of parole pursuant to 42 Pa.C.S.A. § 9714(a)(2) upon [Blackwell,] whose last felony conviction occurred in 1983?

C. Is [Blackwell's] conviction for robbery [-] threat of serious bodily injury against the weight of the evidence presented by the prosecution witnesses at trial[,] as to [Blackwell's] physical actions on the day in question?

Brief for Appellant at 5 (capitalization omitted).

We will address Blackwell's first two issues together, both of which challenge the discretionary aspects of his sentence. There is no absolute right

---

[2] We will hereinafter collectively refer to the retail theft cases, docketed at 0481-2016 and 4428-2015, as "the retail theft cases." We will refer to the case docketed at 1086-2016 as "the robbery case."

to appeal when challenging the discretionary aspects of a sentence.[3]  **See**

**Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013).  Rather, where,

as here, the appellant has preserved the sentencing challenge for appellate

review, by raising it in a timely post-sentence motion, he must (1) include in

his brief a concise statement of the reasons relied upon for allowance of appeal

with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P.

2119(f); and (2) show that there is a substantial question that the sentence

imposed is not appropriate under the Sentencing Code.  **Hill**, 66 A.3d at 363-

64.

　　Here, Blackwell included a Rule 2119(f) Statement in his brief.  **See**

Brief for Appellant at 14-16, 20-21.  Accordingly, we will examine the Rule

2119(f) Statement to determine whether a substantial question exists.[4]  **See**

**Hill**, **supra**.  Blackwell asserts that the trial court abused its discretion in

excessively sentencing him above the aggravated range of the sentencing

---

[3] The "open" guilty pleas that Blackwell entered on the retail theft cases allow him to challenge the discretionary aspects of those sentences.  **See** **Commonwealth v. Tirado**, 870 A.2d 362, 365 n.5 (Pa. Super. 2005) (citing **Commonwealth v. Dalberto**, 648 A.2d 16, 20 (Pa. Super. 1994) (explaining that, when the plea agreement is open, containing no bargain for a specific or stated term of sentence, the defendant will not be precluded from appealing the discretionary aspects of his/her sentence)).

[4] "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Disalvo**, 70 A.3d 900, 903 (Pa. Super. 2013) (citation omitted); **see also** 42 Pa.C.S.A. § 9781(b).

guidelines on the retail theft cases, and in imposing a sentence of life in prison regarding the robbery case, where (1) these sentences were "exclusively" based on Blackwell's prior criminal record; and (2) the trial court failed to consider mitigating factors and Blackwell's rehabilitative needs. *See* Brief for Appellant at 14-16, 20-21. These claims present a substantial question. ***Commonwealth v. Johnson***, 873 A.2d 704, 708 (Pa. Super. 2005) (stating that a claim that the trial court "impos[ed] a sentence based on solely one's criminal history raises a substantial question."); ***see also Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (noting that a substantial question is raised where an appellant alleges that the sentencing court imposed sentence in the aggravated range without adequately considering mitigating circumstances).

Concerning the retail theft cases, Blackwell points out that the respective sentences imposed were in or above the aggravated range, and the trial court ordered the sentences to run consecutively. Brief for Appellant at 17-18. According to Blackwell, "[t]he sentence[s] that [were] imposed focused only upon the [criminal] record of [Blackwell] and the impact upon the community. The trial court did not consider the positive characteristics of [Blackwell], including his work history, reuniting with his family, his age (sixty), and his rehabilitative needs." *Id.* at 18; *see also id.* at 17 (asserting that "[t]he crimes, at worst, are typical retail theft cases"). Concerning the robbery case, Blackwell contends that the sentence imposed of life in prison is manifestly excessive, where the court (1) placed too much emphasis on his

prior felony convictions (the last of which was in 1983) and the need to protect the community from Blackwell; (2) ignored Blackwell's apology to the victim at sentencing; and (3) failed to consider mitigating factors and Blackwell's rehabilitative needs. *Id.* at 22-23.

In its Opinion, the trial court thoroughly addressed Blackwell's challenge to his sentences, adeptly set forth the relevant law, and determined that the sentences imposed were warranted under the circumstances, and not unreasonable or excessive. *See* Trial Court Opinion, 4/10/17, at 9-18. We agree with the trial court's sound rationale and determination, and therefore affirm on this basis in rejecting Blackwell's first two issues. *See id.*

In his third issue, Blackwell contends that the jury's guilty verdict on the robbery charge[5] was against the weight of the evidence. *See* Brief for Appellant at 24-25. Specifically, Blackwell appears to challenge the element of the crime that he threatened the victim, Stacy Sakalauskas ("Sakalauskas"), or placed her in fear of immediate serious bodily injury. *See id.* Blackwell points out that although Sakalauskas testified that Blackwell had slashed at her face with a box cutter, she refused any medical treatment at the scene. *Id.* at 24. He further asserts that two eyewitnesses to the robbery did not testify as to seeing Blackwell brandish any weapon. *Id.* at 24-25.

---

[5] Blackwell was convicted of robbery – threat of serious bodily injury, which the Crimes Code defines as follows: "A person is guilty of robbery if, in the course of committing a theft, he … threatens another with or intentionally puts [her] in fear of immediate serious bodily injury[.]" 18 Pa.C.S.A. § 3701(a)(1)(ii).

Finally, Blackwell emphasizes that the box cutter that police seized from his person was never tested for fingerprints. *Id.* at 25.

Our standard in reviewing a weight of the evidence claim is well-settled:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted); *see also Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (stating that "in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.") (citation and internal quotation marks omitted). Additionally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Rivera*, 983 A.2d 767, 771 (Pa. Super. 2009).

Here, the trial court set forth the relevant evidence and legal authority, weighed the evidence, and determined that the court properly rejected Blackwell's weight challenge. *See* Trial Court Opinion, 4/10/17, at 8-9. We decline Blackwell's invitation to assume the role of the fact-finder and to

- 6 -

reweigh the evidence on appeal. Accordingly, we discern no abuse of the trial court's discretion in denying Blackwell's weight of the evidence challenge. *See, e.g., In the Interest of C.S.*, 63 A.3d 351, 358 (Pa. Super. 2013) (holding that the juvenile court properly exercised its discretion in rejecting the juvenile's weight of the evidence challenge to her adjudication of delinquency for robbery, where (1) the victim, a convenience store clerk, testified that the juvenile stole items from the store after threatening the clerk that a nearby friend of the juvenile possessed a gun; and (2) the juvenile court found the clerk's testimony to be credible); *see also Commonwealth v. Brawner*, 553 A.2d 458, 462 (Pa. Super. 1989) (stating that the trial court properly rejected the defendant's weight of the evidence challenge to his robbery conviction, where the purported contradictions in the testimony of the victim alleged by defendant were minor and did not undermine the propriety of the jury's guilty verdict).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2017

- 7 -

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | No. | CP-09-CR-0004428-2015 |
| | : | CP-09-CR-0000481-2016 |
| v. | : | CP-09-CR-0001086-2016 |
| | : | [3652 EDA 2016] |
| GEORGE BLACKWELL | : | |

## OPINION

The Defendant, George Blackwell, has filed appeals from the judgment of sentence entered in three cases.

On June 28, 2015, the Defendant committed a felony retail theft at the Giant Food Store located in Middletown Township, Bucks County. During this incident, the Defendant took three items of packaged meat from a Giant food store, concealing them in his pants, without paying for them.[1] On July 6, 2015, the Defendant posted bail and was released. On August 16, 2015, while out on bail for the Middletown Township charges, the Defendant committed another felony retail theft at Kohl's Department Store located in Lower Makefield Township, Bucks County. On October 1, 2015, the Defendant entered a guilty plea to the Middletown Township retail theft (Criminal Information no. 4428-2015), a felony of the third degree,[2] before the Honorable Rae B. Boylan. Sentencing on this retail theft was deferred for ninety days. The Defendant was released under the supervision of Bucks County Adult Probation and Parole pending sentencing. On December 10, 2015, the Defendant was charged with the Lower Makefield retail theft. That case involved the following facts and circumstances:

---

[1] N.T. 5/23/16, p. 4.
[2] 18 Pa.C.S. § 3929 (a)(1), (b)(1).

> [L]oss prevention officer Judith Laughlin reported to police that on August 16, 2015, the defendant and another subject [were] observed in the Kohl's department store located at 1641 Big Oak Road in Lower Makefield Township. They were observed parking and exiting a vehicle in the front lot. They entered the store and went down the main aisle. The co-defendant selected a watch from the display stand, which he removed from the box and placed on his left wrist. The he took an Eagles hat and placed it on his head. From there the two went over to the clothing department where both individuals, including this defendant, selected multiple articles of clothing and concealed those items on their persons. The defendant Blackwell can be seen on the video footage stuffing merchandise down his shorts and making his way to the front of the store where he exited the location with the items still down his pants. He then loaded the stolen clothing into the trunk of the vehicle in which he arrived in and at no time did the defendant approach any of the check-out registers or make any attempt to pay for the items he concealed on his person. The defendant thereafter re-entered the establishment visiting several other areas, including a 7-inch tablet, an iHome wireless speaker and a digital photo frame, which he again concealed down his pants. After walking around the store for a short time a little longer, both persons made their way to the front of the store without making payment on those things and they were taken into custody.[3]

On December 12, 2015, the Defendant posted bail and was released on the Lower Makefield charges. On January 30, 2016, while awaiting sentencing for the Middletown Township felony and awaiting trial on the Lower Makefield felony, the Defendant committed a robbery in Fairless Hills, Bristol Township, Bucks County. He was apprehended at the scene and ultimately remanded to Bucks County Correctional Facility.[4] On April 29, 2016, the Defendant entered a guilty plea to the Lower Makefield Township retail theft (Criminal Information no. 481-2016), a felony of the third degree,[5] before the Honorable Jeffrey L. Finley. Sentence was deferred to consolidate with the Defendant's two open cases, *i.e.* the Middletown Township retail theft sentencing and the Bristol Township robbery trial.

---

[3] N.T. 5/23/16, pp. 4-5.

[4] On February 1, 2016, the Defendant's supervised release on the Middletown Township retail theft was revoked.

[5] 18 Pa.C.S. § 3929 (a)(1), (b)(1).

2

On May 10, 2016, the Commonwealth filed notice of its intent to invoke the mandatory sentencing provision set forth in 42 Pa.C.S. § 9714(a)(2) (Sentences for second and subsequent offenses) with regard to the charge of robbery, 18 Pa.C.S. § 3701(a)(1)(ii), a felony of the first degree, based upon the Defendant's 1981 conviction for robbery, a felony of the first degree, and a 1983 conviction for rape, a felony of the first degree.[6]

On May 23, 2016, the Defendant was sentenced to a term of incarceration of twenty-one to forty-two months for the June 28, 2015 Middletown Township felony retail theft at the Giant (Criminal Information no. 4428-2015). On that same date, he was sentenced to a consecutive term of incarceration of three and one-half to seven years for the August 16, 2015 Lower Makefield Township felony retail theft at the Kohl's (Criminal Information no. 481-2016).

The Defendant's jury trial on the robbery and related charges (Criminal Information no. 1086-2016) began on May 23, 2016. The evidence presented at trial established that the robbery occurred on Saturday morning, January 30, 2016, in the parking lot of the Queen Anne Shopping Center, located at 521 Oxford Valley Road, Levittown, Bucks County. That morning, the victim, Stacy Sakalauskas, drove to the credit union located in the shopping center and parked her car.[7] Her wallet and pocketbook were on the passenger seat of the car.[8] As she opened her car door to exit, and as she reached to the passenger seat for her pocketbook, she felt someone on top of her.[9] When she looked up, she saw the Defendant about an inch away from her, holding a box cutter.[10] The Defendant slashed at her with the box cutter. To avoid being cut, the victim struggled with the Defendant, leaning away from him, and began to scream.[11] To muffle her

---

[6] Notice of intent to invoke the mandatory was also provided as to the charge of Aggravated Assault, 18 Pa.C.S. § 2702(a)(1). The Defendant was ultimately acquitted of that charge.

[7] N.T. 5/23/16, p. 18.

[8] N.T. 5/23/16, p. 20.

[9] N.T. 5/23/16, p. 20.

[10] N.T. 5/23/16, p. 21.

[11] N.T. 5/23/16, pp. 21, 24-25.

3

screams, the Defendant put his hand over her mouth.[12] The victim then began to pound on the car horn. The Defendant then reached over her, grabbed her wallet and ran.[13] During this assault, the victim received a cut on her lip. [14] The victim testified that she recognized the weapon to be a box cutter from the angle of the blade.[15] The victim identified the Defendant as her attacker immediately following the attack and at trial.[16]

The Defendant was apprehended by the joint efforts of two civilians who were in the vicinity at the time of the robbery, Michael Amenhauser and Raymond Hollahan. Mr. Amenhauser testified that when he arrived in the parking lot near the credit union, he heard the car's horn and heard the victim screaming that she was being robbed. When he saw a man run from the victim's car, he chased him on foot.[17] During the chase, the Defendant stopped, threw the victim's wallet at Mr. Amenhauser and then continued to flee on foot.[18] Raymond Hollahan was also in the parking lot of the Queen Anne's shopping Center on the morning of January 30, 2016. When he heard a woman screaming that she had been robbed and saw two men running across the parking lot, he joined in the chase.[19] Mr. Amenhauser and Mr. Hollahan were able to stop and detain the Defendant.[20] Mr. Hollahan instructed the Defendant to keep his hands where he could see them. When the Defendant failed to do so, Mr. Hollahan "took [the Defendant] to the ground" and, after a brief struggle, removed the box cutter from him, throwing it to the side.[21]

---

[12] N.T. 5/23/16, p. 21.
[13] N.T. 5/23/16, p. 21.
[14] N.T. 5/23/16, p. 32.
[15] N.T. 5/23/16, p. 21.
[16] N.T. 5/23/16, pp. 23, 62.
[17] N.T. 5/23/16 pp. 35, 37.
[18] N.T. 5/23/16, pp. 37, 40.
[19] N.T. 5/23/16, p. 46.
[20] N.T. 5/23/16, p. 37.
[21] N.T. 5/23/16. pp. 47, 48, 51.

4

Officer Todd Evans of the Bristol Township Police Department testified that he responded to the scene and observed several men holding the Defendant to the ground. He also observed the box cutter on the ground near the Defendant.[22] The victim identified the Defendant as the individual who robber her.[23] She identified the box cutter as the weapon he used to during the robbery and Mr. Hollahan identified the box cutter was the one he removed from the Defendant.[24] Officer Evans noticed a small cut to the victim's lip.[25] The wallet was retrieved from the driveway near the Arby's and was turned over to Officer Evans. [26]

Officer Thomas Van Winkle of the Bristol Township Police Department testified that he responded to the scene and transported the Defendant to the police station.[27] Officer Van Winkle searched the Defendant and removed the end of a pool cue and a pair of latex gloves from his person.[28] While Officer Van Winkle was transporting the Defendant to the police station, he heard the Defendant repeatedly state, "I am screwed."[29] The Defendant did not present any evidence or testimony.

On May 24, 2016, the jury found the Defendant guilty of robbery – threatens another with or intentionally puts another in fear of immediate serious bodily injury, a felony of the first degree,[30] robbery – physical taking by force however slight, a felony of the third degree,[31] Theft, a misdemeanor of the first degree,[32] Receiving Stolen Property, a misdemeanor of the first

---

[22] N.T. 5/23/16, p. 61.
[23] N.T. 5/23/16, p. 62.
[24] N.T. 5/23/16, pp. 24, 48.
[25] N.T. 5/23/16, p. 64.
[26] N.T. 5/23/16, pp. 62-63.
[27] N.T. 5/23/16, p. 62.
[28] N.T. 5/23/16, pp. 68-69.
[29] N.T. 5/23/16, p. 71.
[30] 18 Pa.C.S. § 3701(a)(1)(ii), (b)(1).
[31] 18 Pa.C.S. § 3701(a)(1)(v), (b)(1).
[32] 18 Pa.C.S. §§ 3921(a), 3903.

5

degree,[33] Simple Assault – attempting to cause/causing bodily injury,[34] and Possessing an Instrument of Crime, *i.e.* a box cutter (Criminal Information no. 1086-2016).[35] On that same date, the Defendant stood for sentencing. Pursuant to Section 9714(a)(2), the Defendant was sentenced to life imprisonment without parole on count 1, robbery, a felony of the first degree. No further penalty was imposed on the remaining counts.

On June 1, 2016, the Defendant filed post-sentence motions pursuant to Pa.R.Crim.P. 720 in all three cases. As to, the Middletown Township and Lower Makefield Township retail thefts, the Defendant filed motions to modify the sentences imposed stating his desire to present additional testimony as to his background and his life at the times the crimes occurred. As to the robbery, the Defendant filed a motion in arrest of judgment and for a new trial challenging the sufficiency of the evidence and the weight of the evidence. He also filed a motion to reconsider the sentence imposed alleging (1) this Court failed to consider the sentencing Guidelines in imposing sentence, (2) the sentences imposed exceeded the aggravated range of the sentencing guidelines and imposition of the life sentence pursuant to Section 9714(a)(2), exceeded the aggregate statutory maximum sentence for all of the offenses, (3) the Defendant's fiancée and his son were unable to testify on the Defendant's behalf at the time of the original sentencing hearing, and (4) this Court abused its discretion in imposing an unreasonable and excessive sentence "under the circumstances of this case and the defendant."[36]

A hearing on the Defendant's motions to modify sentence was held on October 21, 2014. At the conclusion of the hearing, the Defendant's motions to modify the sentences were denied.

---

[33] 18 Pa.C.S. §§ 3925(a), 3903.
[34] 18 Pa.C.S. § 2701(a)(1).
[35] 18 Pa.C.S. § 907(a).
[36] Post Sentence Motion Pursuant to Pa.R.Crim.Pro. 720, ¶¶ 6(a)-(d).

6

The remainder of the Defendant's post-sentence motions were denied by order dated October 27, 2016.

The Defendant raised four issues in his Statement of Matters Complained of on Appeal:

1. Is the [Defendant's] conviction for robbery threat of serious bodily injury against the weight of the evidence presented by the prosecution witness at trial as to the Appellant's physical actions on the day in question?

2. Did the trial court abuse its discretion by imposing a life sentence without the possibility of parole pursuant to 42 Pa.C.S.A. §9714(a)(2) upon the [Defendant] whose last felony conviction was in 1983?

3. Did the trial court abuse its discretion by imposing an excessive sentence upon the [Defendant] for his conviction for retail theft of twenty-two and one half months to forty-five months?

4. Did the trial court abuse its discretion by imposing a consecutive, excessive sentence upon the [Defendant] for another retail theft conviction of the maximum sentence of forty-two to eighty-six months?

For the reasons set forth below, this Court finds the Defendant's claims to be without merit.

## Weight of the Evidence:

A challenge to the weight of the evidence, "concedes that there is sufficient evidence to sustain the verdict but claims that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa.Super.2003) (quoting Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751-52 (2000)). It is for the jury to determine the credibility of witnesses and the jury is free to believe all, part, or none of the evidence. Commonwealth v. Rakowski, 987 A.2d 1215, 1219 (Pa.Super.2010). Since the weight to be accorded the evidence is within the province of the factfinder, a verdict may only be overturned if it is so contrary to the evidence as to shock one's sense of justice. Commonwealth

7

v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003). On appeal, the appellate court reviews the trial court's exercise of its discretion. Commonwealth v. Forbes, 867 A.2d 1268, 1273 (Pa.Super.2005)

> The scope of a trial court's discretion to address a post-verdict weight claim is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative to give right another opportunity to prevail. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. When the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion. Our Supreme Court has repeatedly emphasized: One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

Id. (citations and quotations omitted).

A person is guilty of robbery, if in the course of committing a theft, he, "threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1). A person commits a theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof. 18 Pa.C.S. § 3921. "Serious bodily injury" is defined as bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 18 Pa.C.S. § 2301.

In the instant case, the victim testified that the Defendant physically restrained her and slashed at her face with a box cutter while removing her wallet from the passenger seat of her car. Witnesses observed the victim struggling with the Defendant and heard her yelling that she was being robbed. The Defendant attempted to flee the scene but was immediately apprehended and found to be in possession of a box cutter. The victim's wallet was found where the

8

Defendant was seen discarding it during the short foot pursuit. Under these circumstances, the jury's verdict cannot be said to be "so contrary to the evidence that it shocks one's sense of justice." Rakowski, 987 A.2d at 1219.

In his post-verdict motion, the Defendant asserted that the verdict was against the weight of the evidence on the grounds that "he lacked the requisite physical action and lacked the requisite state of mind to support his conviction."[37] Contrary to the Defendant's assertions, the evidence established that the Defendant engaged in threatening conduct calculated to place the victim in immediate fear of serious bodily injury or death. The Defendant wielded a deadly weapon[38] and by slashing at the victim's face, used it in a fashion clearly designed to place the victim in fear of death or serious bodily injury. The victim testified that the Defendant slashed at her with the box cutter within three inches of her face, causing her to fear for her life.[39]

### Life Sentence:

The standard of review applicable to a challenge to the discretionary aspects of sentence is well settled. A sentence will not be overturned unless the record shows a manifest abuse of discretion, which is more than mere error in judgment. Commonwealth v. Redman, 864 A.2d 566, 569 (Pa.Super.2004). A manifest abuse of discretion may be found only where the record establishes that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa.Super.1999). The decision of the sentencing judge should be given great deference since he or she is in the best position to view the defendant

---

[37] Post Sentence Motion Pursuant to Pa.R.Crim.Pro. 720, 6/1/16, p. 2, ¶ 5.

[38] "Deadly weapon" is defined as any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury. 18 Pa.C.S. § 2301.

[39] N.T. 5/23/16, pp. 21, 24-25.

9

and evaluate the individual circumstances of the case. Commonwealth v. Walls, 926 A.2d 957 (Pa.2007).

Section 9714, sentences for second and subsequent offenses, provides that upon conviction of a third "crime of violence," the offender "shall be sentenced to a minimum sentence of at least 25 years of total confinement." 42 Pa.C.S. § 9714(a)(2). The statute further provides that "the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole." Id.

In the instant case, the Defendant was convicted of robbery in violation of Section 3701(a)(1)(ii), a "crime of violence" as defined by statute. 42 Pa.C.S. § 9714(g). The Commonwealth introduced certified records of to two prior convictions for crimes of violence which arose out of separate criminal transactions.

On March 14, 1983, following a trial by jury, the Defendant was convicted of a burglary of an occupied residence, a felony of the first degree, in violation of 18 Pa.C.S. § 3502, robbery – threaten another with or intentionally place another in fear of immediate serious bodily injury), a felony of the first degree, in violation of 18 Pa.C.S. § 3701, involuntary deviate sexual intercourse – forcible compulsion (IDSI), a felony of the first degree, in violation of 18 Pa.C.S. § 3123 and theft by unlawful taking of disposition, a misdemeanor of the second degree, in violation of 18 Pa.C.S. § 3921 (Criminal Information no. 5041-1981). robbery – threatening or placing another in fear of serious bodily injury and the IDSI are both crimes of violence pursuant to 42 Pa.C.S. § 9714(g). The criminal offenses which led to these convictions were committed on the night of October 17, 1981. On that night, the female victim was in her apartment located in the Edgley Run Apartments in Bristol Township Bucks County. The Defendant knocked on the door. When the victim opened the door, the Defendant pushed her inside, held a large knife

10

to her throat and ordered her to give him all of the money she had in the apartment. The victim turned over approximately $116.63 and was then forced into the bedroom where, at knife point, she was forced to perform oral sex on the Defendant. On October 28, 1983, the Defendant was sentenced to a term of incarceration of ten to twenty years to be served consecutive to the sentence he was then serving.

On August 9, 1983, the Defendant entered a plea of *nolo contendere* to rape – forcible compulsion, a felony of the first degree, in violation of 18 Pa.C.S. § 3121 (Criminal Information no. 1024-1983). This criminal offense occurred on September 3, 1981. The victim, a 16 year old female, was sexually assaulted in a field located in Bristol Township. Initially the Defendant approached the victim and asked her for money and "dope." The victim told the Defendant that she did not have money and "does not do dope." After she walked away from the Defendant, the Defendant grabbed her from behind, dragged her behind bushes bordering the field, where, at knife point, she was forced to perform oral sex on the Defendant. Upon entering his plea, the Defendant was sentenced to serve a term of incarceration of three to ten years to be served concurrently to the sentence he was already serving in New Jersey at the time.

This Court was also provided with the following information regarding the rest of the Defendant's criminal history:

> The Defendant was adjudicated delinquent of auto theft as a juvenile, resulting in his placement at the Youth Forestry Camp.
>
> 1973 – Bucks County, Pennsylvania – retail theft – disposition: unknown
>
> 1973 – Bucks County, Pennsylvania – theft, receiving stolen property, criminal conspiracy, corruption of minors – disposition 6/21/74
>
> 1973 – Bucks County, Pennsylvania – receiving stolen property, aggravated assault 6/21/74

11

1974 – Bucks County, Pennsylvania – felony one robbery, simple assault, criminal conspiracy, receiving stolen property – disposition 6/21/74

1974 – Bucks County, Pennsylvania – theft – disposition: unknown

1974 – Bucks County, Pennsylvania – escape – disposition 12/9/77

1978 – Bucks County, Pennsylvania – retail theft – disposition 4/10/79

1979 – Bucks County, Pennsylvania – retail theft – disposition 7/12/79

1979 – Bucks County, Pennsylvania – theft, receiving stolen property – disposition 7/10/79

1982 – New Jersey – burglary – disposition (11/1/82): 5 years SCI

1982 – New Jersey – burglary, larceny – disposition (11/1/82): 5 years SCI

1984 – New Jersey – escape – disposition (2/2/84): 5 years SCI

1984 – New Jersey – escape – disposition (6/20/86): 4 years SCI[40]

The Defendant was incarcerated from 1974 to 1979. The Defendant then remained in custody from August 18, 1982 until April 11, 2013, at which time he was transferred to a halfway house where he remained until August 18, 2013. The Defendant admitted approximately 28 misconducts while incarcerated. The Defendant is a Tier III sexual offender under Megan's Law.[41]

At the time of sentencing on the robbery, the Defendant characterized his criminal behavior as "a lot of bad choices and bad judgment."[42] He testified that he and his girlfriend were abusing crystal methamphetamine.[43] He stated that, although he knew there are treatment programs available, he did not have the opportunity to get help for his addiction.[44]

---

[40] N.T. 5/24/16, p. 58; Pretrial Supervision Report, dated 12/16/15, p. 2.
[41] N.T. 5/24/16, pp. 58-59; Pretrial Supervision Report, dated 12/16/15, pp. 2-3.
[42] N.T. 5/24/16, p. 71.
[43] N.T. 10/21/16, p. 37.
[44] N.T. 10/21/16, p. 38.

12

At the conclusion of the sentencing hearing, this Court found that the Defendant had been previously convicted of two crimes of violence arising from separate criminal transactions. Having been convicted of a third crime of violence, the Defendant was subject to the mandatory minimum sentencing provision set forth in 9714(a)(2), which required imposition of a mandatory minimum sentence of 25 years total confinement. This Court further found that the mandatory minimum sentence was insufficient to protect the public safety and therefore imposed a sentence of life imprisonment without parole.

In imposing a life sentence, this Court considered the number and variety of the Defendant's prior crimes, the level of violence the Defendant engaged in when not incarcerated, and his use of a deadly weapon during the commission of his crimes. The Defendant committed this offense while on bail pending sentencing for one felony and pending trial for another. Despite the intervention of the criminal justice system, the Defendant continued to engage in unprovoked violence. Of grave concern to this Court was the Defendant's characterization of violent assaults against women and the myriad of other serious criminal activity as "bad choices" or "bad judgment."

The Defendant's attitude and testimony at sentencing demonstrated beyond question that he has no empathy for his victims and no appreciation for the harm he has caused them. Rather, the Defendant minimized the seriousness of his conduct, commenting that he didn't cause "very serious bodily injury" and that "I wield weapons for the threat alone."[45] Based on these facts and circumstances, this Court found that the Defendant cannot or will not stop engaging in violent criminal behavior or conform his conduct to the requirements of the law. This Court therefore

---

[45] N.T. 5/24/16, p. 71.

13

concluded that the only means by which the public could be protected was to sentence the Defendant to life imprisonment without parole.

The Defendant contends that this Court's imposition of a life sentence on the robbery conviction the sentence was an abuse of discretion because his last felony conviction occurred in 1983. This argument is specious. The Defendant committed a knifepoint rape and a knifepoint robbery and IDSI within a period of less than two months. Thereafter, he remained incarcerated until August 18, 2013. Upon his release, the Defendant immediately took up where he left off. He began purchasing crystal methamphetamine.[46] Within less than twenty four months of his release, the Defendant had committed two more felonies. Within thirty months, he had once again assaulted a woman with a deadly weapon. During the two and a half years the Defendant remained at liberty, he committed two sexual assaults with a weapon, one robbery with a weapon and two more felony theft offenses. The passage of time, is only relevant in that it demonstrates that the Defendant, age sixty at the time he committed this robbery, will not stop engaging in violent conduct merely because he is getting older.[47]

### Retail Theft Sentences:

In his final two claims of error, the Defendant asserts the sentences imposed on the Defendant's felony retail theft convictions were excessive. The Defendant's claims constitute a challenge to the discretionary aspects of sentence. As stated above, discretionary aspects of sentencing will not be overturned absent a manifest abuse of discretion. Redman, 864 A.2d at 569. The applicable standard of review is set forth in Commonwealth v. Walls, 592 Pa. 557, 926 A.2d 957 (2007):

---

[46] N.T. 10/21/16, p. 41.
[47] N.T. 5/24/16, pp. 73-78.

14

...the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. Commonwealth v. Smith, 543 Pa. 566, 673 A.2d 893, 895 (1996) ("Imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion."). As stated in Smith, an abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Id. In more expansive terms, our Court recently offered: "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." Grady v. Frito-Lay, Inc., 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Commonwealth v. Ward, 524 Pa. 48, 568 A.2d 1242, 1243 (1990); see also Commonwealth v. Jones, 418 Pa.Super. 93, 613 A.2d 587, 591 (1992) (en banc) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime."). Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Ward, 568 A.2d at 1243. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

Id. at 961-962 (footnotes omitted).

When imposing a sentence, a court must consider the factors set forth in 42 Pa.C.S. § 9721(b). Specifically, the court shall consider the protection of the public, the gravity of the

offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs and the sentencing guidelines. 42 Pa.C.S. § 9721(b). As to the sentencing guidelines, the court in Walls reaffirmed that the guidelines "have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors-they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." Id. at 964-965. Under the current Sentencing Code there is no requirement that a sentencing court's imposition of sentence must be the minimum possible confinement. Id. at 965. Where the sentence imposed is within the sentencing guidelines, the sentence must be affirmed unless an appellate court finds "the case involves circumstances where the application of the guidelines would be *clearly unreasonable*." 42 Pa.C.S. § 9781(c)(2) (emphasis added). Where the sentence imposed exceeds the sentencing guidelines, the sentence is reviewed to determine if it is "*unreasonable*."

Id. at 963. The parameters of that inquiry were explained as follows:

> …we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781 (d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b).

Id. at 963-964.

16

The Defendant was sentenced to a term of incarceration of twenty-one to forty-two months for the June 28, 2015, Middletown Township felony retail theft at the Giant (Criminal Information no. 4428-2015). He was sentenced to a consecutive term of incarceration of three and one-half to seven years for the August 16, 2015, Lower Makefield Township felony retail theft at the Kohl's (Criminal Information no. 481-2016). The guidelines applicable to each retail theft are as follows: mitigated – 9 months; standard – 12-18 months; aggravated – 21 months. The sentence imposed in the Middletown Township case fell within the aggravated range of the sentencing guidelines. The sentence imposed on the Lower Makefield Township case exceeded the sentencing guidelines.

In imposing sentence, this Court considered all of the factors set forth in the Sentencing Code including the protection of the public, the gravity of the offense, the history, character, condition and rehabilitative needs of the Defendant and the sentencing guidelines as required.[48] This Court noted that the Defendant has an extensive criminal record, including convictions for robbery, rape, burglary, and aggravated assault.[49] The Defendant committed twenty-two misconducts during his most recent incarceration, and therefore served the maximum sentences on his most recent offenses.[50] The Defendant was released from prison in 2013, and was reengaging in criminal conduct by 2015.[51] The Defendant has demonstrated that he cannot go a significant period of time without engaging in a criminal offense and that, despite the repeated intervention of the criminal justice system, he will continue to commit engage in criminal conduct if he is not incarcerated.[52] Although the theft at the Giant was, in and of itself, relatively

---

[48] N.T. 12/14/2015 pp. 14-19. This Court incorporated the record of the initial sentencing hearing into the record of the reconsideration of sentencing hearing, N.T. 1/19/16 p. 38, and further clarified its reasons for the sentence imposed. N.T. 1/19/16 pp. 32-39.
[49] N.T. 5/23/16, p. 12.
[50] N.T. 5/23/16, p. 12.
[51] N.T. 5/23/16, pp. 12-13.
[52] N.T. 5/23/16, p. 13

17

minor, given the nature of the Defendant's criminal record, this Court concluded that an aggravated sentence was warranted. When a sentencing court determines that an aggravating circumstance is present, the court may impose an aggravated range sentence. 204 Pa.Code § 303.13(a). Having determined that aggravating circumstances were present, and having stated those circumstances on the record, imposition of an aggravated range sentence was not "clearly unreasonable."

The theft at the Kohl's was not a minor offense. It was organized felony theft designed to obtain as much property as possible for as much value as possible. It was committed within weeks of the Middletown Township theft, while the Defendant was awaiting trial for that offense.[53] Based on all of these additional factors, imposition of a sentence that exceeded the sentencing guidelines was not "unreasonable."

---

[53] N.T. 5/23/16 pp. 14-15.

18

For the reasons set forth above, this Court finds the Defendant's claims to be without

merit.

BY THE COURT:

4/10/17

Date

DIANE E. GIBBONS, J.

19